UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICHOLAS GELETA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No. 06-1822 (RJL) ) |
| ADRIAN M. FENTY, | ) ) |
| Defendant. | ) |

MEMORANDUM OPINION
(February 19, 2010) [# 25]

Plaintiff, Nicholas Geleta ("Geleta"), brings this action against Adrian Fenty (the "defendant") alleging violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, by his employer, the D.C. Department of Mental Health ("DMH"), for retaliation against him for participating in certain protected EEO activity. Before the Court is the defendant's Motion for Summary Judgment. Upon consideration of the parties' pleadings, relevant law, and the entire record herein, the defendant's motion is GRANTED.

BACKGROUND

Plaintiff was a Health Systems Administrator for the DMH Office of Policy and Planning. Def's Mot. For Summ. J. ("Def.'s Mot.") Ex. A ¶ 3. In that capacity, Geleta served as the Project Director for D.C. Children Inspired Now Gain Strength ("DCCINGS"), a mental health program for youth and families funded by a grant from the U.S. Department of Health and Human Services ("HHS"), from approximately 2002

through March 2005. *Id.* ¶¶ 3-4. During that time, his salary was $77,965 (grade 13, step 8). Def.'s Mot. Ex. M. In the fall of 2004, Geleta's immediate supervisor was Velva R. Taylor-Spriggs, an African-American, who was the Director of the Child and Youth Services Division within the DMH Office of Policy and Planning. Compl. ¶ 8; Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") Ex. 11 at 1, 21. In November 2004, Geleta provided a written statement in support of a discrimination complaint filed by Taylor-Spriggs. Compl. ¶ 9; Pl.'s Opp'n Ex. 11 at 4.

Beginning in March 2005, Geleta was reassigned to a succession of positions that he alleges were, unlike his position as Project Director of DCCINGS, "non-supervisory." He claims that his reassignment was retaliation for his statement in support of Taylor-Spriggs' EEO complaint. Compl. ¶ 10; Pl.'s Opp'n 11-15. The defendant counters that Geleta's reassignments were the result of DMH's decision to realign DCCINGS following an HHS site visit in October 2004. *See* Def.'s Mot. 10-14.

Initially, Geleta was temporarily reassigned to the Oak Hill Youth Detention Center for approximately thirty days, during which time he maintained his title of Health System Administrator. Def.'s Mot. Exs. A ¶¶ 11-12, J at 2. In March 2005, Geleta was detailed for thirty days to the DMH Office of Accountability, where he reported to Deputy Director Susan Curran. Def.'s Mot. Ex. D. At that time, it was agreed that Geleta's position as Health Systems Administrator for the Office of Program and Policy would be formally transferred to the DMH Office of Accountability. *See* Def.'s Mot. Ex.

A ¶ 12, E. Geleta's detail was extended for another 120 days so that Curran could complete a job description for what became his permanent position: Residential Treatment Center Certification and Monitoring Projects Manager for the DMH Office of Accountability. Def.'s Mot. Exs. F, G. As of April 27, 2005, Geleta's salary had increased to $84,658 (grade 14, step 5). Def.'s Mot. Ex. N. On September 1, 2005, Geleta timely filed a charge of discrimination based on retaliation with the EEOC. Compl. ¶ 2. Notwithstanding his EEOC charge, Geleta's position was officially transferred to the Office of Accountability in February 2006, and he applied for and accepted the permanent position. Def.'s Mot. Ex. A ¶ 14. In his transition to the Office of Accountability, the plaintiff did not sustain a step down within the agency's organizational hierarchy and continued to report to an agency director. *See* Def.'s Mot. Exs. G, I, & K. In March 2006, DMH *increased* Geleta's salary to $87,148 (grade 14, step 6). Def.'s Mot. Ex. O. On July 24, 2006, he received a Right to Sue Letter from the EEOC concerning his charge of discrimination, and this civil action followed. Compl. ¶ 2.

In September 2007, DMH advised Geleta that his position was being converted to the Management Supervisory Service ("MSS") and that if he accepted this appointment, he would become an at-will employee and would receive an increase in pay to bring his salary in line with other District MSS employees. Def.'s Mot. Ex. H. The plaintiff accepted the appointment to the MSS on October 1, 2007. *Id.* As of October 14, 2007,

Geleta continued to serve as Residential Treatment Center Certification and Monitoring Projects Manager, and his annual salary was $95,781.76. Def.'s Mot. Ex. P.

## ANALYSIS

Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment shall be granted when the record demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing same). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (citing Fed. R. Civ. P. 56(e)).

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). If the employer offers a legitimate, nondiscriminatory reason for its action, as the defendant has here, a court should proceed to the question of retaliation *vel non*. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir.

2008); *see also Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (applying *Brady* to Title VII retaliation claims). "At that stage, the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation." *Jones*, 557 F.3d at 678. Notably, the anti-retaliation provision of Title VII does not protect an individual from any and "all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Thus, for a harm to rise to the level of actionable retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotations omitted).

Plaintiff claims that after he attested to an incident of discrimination against Taylor-Spriggs, the defendant retaliated against him by reassigning him away from DCCINGS. However, upon a close examination of the record, the Court concludes that no juror could find that Geleta's reassignments would have constituted a materially adverse action in the mind of a reasonable employee. As an initial matter, as described above, it is undisputed that Geleta's salary, employee grade, and rank only *increased* following his participation in the EEO process. Indeed, his salary rose several times, starting from $77,965 prior to his detail to Oak Hill and eventually reaching $95,781.76, when he became part of the MSS. *See* Def.'s Mot. Exs. M—P. Given that Geleta does not allege that his reassignments affected his pay or benefits, his "claim of an adverse

employment action must therefore rest on a significant change in his job responsibilities." *Forkkio v. Powell*, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002).

To that end, Geleta argues that there is a genuine issue regarding whether he maintained supervisory duties following his removal as Project Director of DCCINGS. He asserts that, unlike the defendant's characterization of his reassignments, he in fact lost all supervisory duties, which he alleges constitutes an adverse action. Although documentary evidence indicates that Geleta did supervise approximately twenty employees in his position as DCCINGS Project Director, *see* Def.'s Mot. Ex. K at DC 0048, the only evidence he points to for any subsequent loss of supervisory duties are declarations by himself and Curran and what he terms a "reclassification" of his position from "supervisory" to "managerial" on position description forms. *See* Pl.'s Opp'n 11-12; Pl.'s Opp'n Exs. 1-3; Def.'s Mot. Exs. G, K. Neither the declarations submitted nor the plaintiff's cited "reclassification" evidence supports a finding of a materially adverse action because they do not indicate that he lost all supervisory duties.

First, the Geleta and Curran declarations assert, without any documentary support, that Geleta did not supervise any employees when he was at Oak Hill or the Office of Accountability. *See* Pl.'s Opp'n Ex. 1 at 92-93, Ex. 2 ¶ 4, Ex. 3 ¶ 8. Putting aside the fact that Geleta's detail to Oak Hill was merely a temporary position for thirty days, the declarations fail to account for the fact that the job descriptions for his position as Residential Treatment Center Certification and Monitoring Projects Manager at the

Office of Accountability do provide for supervisory duties, both before and after that position became part of the MSS. *See* Def.'s Mot. Ex. G at DC 0101 ("Supervises and directs a primary investigator for each investigation assigned."); Def.'s Mot. Ex. I at DC 0052-0053 ("Provides leadership and supervision to all staff . . . . May also supervise ad hoc project staff as necessary. . . . Supervises and directs a primary investigator for each investigation assigned."). "Thus, '[a]lthough, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule.'" *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465 (D.C. Cir. 2009) (quoting *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999)). Geleta's and Curran's statements fall into this exception and, therefore, do not provide evidence that Geleta lost all supervisory duties in his reassignments.

Second, Geleta's "reclassification" argument relies solely on the fact that the official position description form for Project Director for DCCINGS lists the position as "supervisory," whereas the position description for Residential Treatment Center Certification and Monitoring Projects Manager for the Office of Accountability lists the as "managerial." *Compare* Def.'s Mot. Ex. K at box 10 *with* Def.'s Mot. Ex. G at box 11. However, regardless of what box was checked on these forms, the narrative job descriptions clearly indicate that Geleta's reassignments did not leave him "with 'significantly different'—and diminished—supervisory and programmatic

responsibilities." *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007). Instead, the description of his "major duties" as Residential Treatment Center Certification and Monitoring Projects Manager indicates significant managerial and leadership responsibilities, including oversight and supervision of staff. *See* Def.'s Mot. Exs. G, I.

In fact, despite the plaintiff's attempt to analogize to *Czekalski*, Geleta's situation is entirely distinguishable. In *Czekalski*, the plaintiff produced evidence that she went from overseeing 260 employees, 700 contractors, fifty programs, and a $400 million budget to overseeing fewer than ten employees and one program with a minimal budget. 475 F.3d at 364-65. In sharp contrast, Geleta has produced just the conclusory statements found in his own and Curran's declarations that he went from supervising twenty employees to none. Furthermore, unlike the situation in *Czekalski*, Geleta did not suffer a step down within the DMH's organizational hierarchy when reassigned to the Office of Accountability, nor was he reduced to reporting to a former peer. *See id.* at 365.

For similar reasons, Geleta's reassignments are dissimilar to the plaintiffs' in *Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006), and *Stewart v. Ashcroft*, 352 F.3d 422 (D.C. Cir. 2003), the other two cases he relies on in his opposition to the defendant's motion. In *Holcomb*, the plaintiff's duties after her reassignment were six levels below her current employee grade and, remarkably, below the level at which she started her government employment ten years earlier. *See* 433 F.3d at 902-03. The *Holcomb* plaintiff was also allowed to remain in this "professional purgatory" for over two years.

*Id.* at 903. Geleta, by contrast, enjoyed a continuous increase in grade and step after his reassignment. *See* Def.'s Mot. Exs. M, N, & O. Moreover, in *Stewart*, the adverse action alleged was the denial of the plaintiff's application for his supervisor's position. *See* 352 F.3d at 427. To say the least, no such situation occurred here.

The Supreme Court has stated that "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington N.*, 548 U.S. at 71 (internal quotations omitted). When viewed in light of all of the circumstances, no juror could conclude that a reasonable employee would find that Geleta suffered a materially adverse action when he was reassigned away from his position with DCCINGS. Instead, the undisputed evidence shows that he retained his title at Oak Hill; received successive pay increases; was promoted to higher grades and steps; and later earned a permanent position with the Office of Accountability that entailed significant managerial and supervisory duties. Thus, there being no evidence of a materially adverse action, Geleta has failed to establish any genuine issue of fact that his employer retaliated against him in violation of Title VII. *See id.*; *Forkkio*, 306 F.3d at 1131-32.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS the defendant's Motion for Summary Judgment and DISMISSES the action in its entirety. An order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge